## IN THE UNITES STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**FILED**

NOV 2 8 2006

MICHAEL W. DOBBINS 2006
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JOSE LOUIS DURAN and EVELYN TORRES | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | No. |
| v. | ) | |
| | ) | **06CV6469** |
| CITY OF CHICAGO; PATRICIA L. | ) | **JUDGE HOLDERMAN** |
| LUTHER, in her official and individual | ) | **MAGISTRATE JUDGE COLE** |
| capacities; and TINA FIGUEROA- | ) | |
| MITCHELL, in her official and individual | ) | |
| capacities | ) | **JURY DEMAND** |
| | ) | 12-Person |
| Defendants | ) | |
| | ) | |

## COMPLAINT

COME NOW, JOSE LOUIS DURAN and EVELYN TORRES, individually and as next friends of E.D., a minor, by and through their attorney, David P. Buchanan, and plead as follows:

### INTRODUCTION

JOSE LOUIS DURAN and E.D. hereby assert the following claims against the defendants in the above-entitled action:

**(1)** **Violation of 42 U.S.C. 1983:** False detention and confinement and warrantless interrogation in violation of the 4th, 5th and 14th Amendments by police officer PATRICIA LUTHER coercing plaintiffs to take polygraph examinations at a remote location, transporting them to that location in a police car, by telling them they would not get their baby back from DCFS custody unless they took the tests and by conducting an extended, abusive interrogation, under threat of arrest, without advising plaintiffs of their *Miranda* rights.

**(2)** **Violation of 42 U.S.C. 1983:** Due process violations and conspiracy to hide exculpatory information in violation of the 4th and 5th and 14th Amendments by

officer TINA FIGUEROA-MITCHELL in administering multiple polygraph tests, administering the tests in an inappropriate manner, forcing plaintiffs to take these examinations in English rather than Spanish and then failing to reveal these facts, as well as all of the test results, to the Illinois Department of Children and Family Services (DCFS), to the Multidisciplinary Pediatric Education and Evaluation Consortium (MPEEC) and to the State of Illinois Attorneys handing the Juvenile Child Protection Action concerning E. D.;

(3) **Violation of 42 U.S.C. 1983**: Due process violations in hiding exculpatory information in violation of the 4th and 5th and 14th Amendments by officer PATRICIA LUTHER by giving false and misleading information concerning polygraph test results of the plaintiffs to the Illinois Department of Children and Family Services (DCFS), to the Multidisciplinary Pediatric Education and Evaluation Consortium (MPEEC) and to the State of Illinois Attorneys handing the Juvenile Child Protection Action concerning E.D.;

(4) **Violation of 42 U.S.C. 1983:** Violation due process rights under the 4th, 5th and 14th Amendments when police officers, TINA FIGUEROA-MITCHELL and PATRICIA LUTHER, in a conspiracy with each other, intentionally, and/or with willful and wanton disregard for accuracy, reported false and/or misleading polygraph test results to DCFS, to the MPEEC physician and to the Illinois State's Attorneys knowing that this information would be used in legal proceedings to remove plaintiffs' daughter, E.D., from them;

(5) **Violation of 42 U.S.C. 1983:** Constitutional rights violations by the CITY OF CHICAGO under the 4th, 5th and 14th Amendments for failing to adequately train its officers, and failing to properly supervise the administration of polygraph examinations performed on plaintiffs to ensure that proper procedure was followed and failing to properly supervise the accuracy of reporting the results to DCFS, MPEEC and the Illinois State's Attorney;

(6) **Malicious Prosecution**: Defendant police officers, with malice, and/or with willful and wanton disregard for accuracy, reported false and misleading polygraph test results to DCFS, MPEEC and the Illinois State's Attorneys knowing that this information would be used in legal proceedings against plaintiffs to remove their daughter, E.D., from their home;

(7, 8) **Assault and Battery**: Defendant officer, PATRICIA LUTHER, threatened and pushed plaintiff, EVELYN TORRES, while she interrogated EVELYN TORRES at the police station after the polygraph test;

(9) **Intentional Infliction of Emotional Distress**: Defendant officer PATRICIA LUTHER intentionally inflicted emotional distress to plaintiffs by maliciously prosecuting them, by abusing the legal process by unlawful purpose, by violating plaintiff's constitutional rights, by falsely detaining and interrogating the plaintiffs, by conspiring against plaintiffs, by pushing EVELYN TORRES and by interfering with plaintiff's civil rights through the use of threats, coercion, and intimidation. Further, officers PATRICIA LUTHER and TINA FIGUEROA-MITCHELL intentionally and/or with willful and wanton disregard for accuracy, reported false and/or misleading polygraph test results to DCFS thereby leading to legal proceedings that removed E.D. from her parents for more than 8 months and that sought to Adjudicate her a Ward of the State;

(10) **Defamation Per Se**: The Defendant police officers, PATRICIA LUTHER and TINA FIGUEROA-MITHCELL, intentionally and maliciously, and/or with reckless disregard for accuracy, published false statements to DCFS, the MPEEC and the Illinois State's Attorney concerning the polygraph results pertaining to plaintiffs thereby causing them to lose their child for a period of more than 8 months.

## JURISDICTION

1. Jurisdiction of this court arises under the 4th, 5th and 14th Amendments to the United States Constitution, 42 U.S.C. § 1983 and the common law.

2. Jurisdiction of this court for the pendent state law claims is authorized by F.R.Civ.P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

## PARTIES

3. Plaintiffs JOSE LOUIS DURAN and EVELYN TORRES are natural persons residing at 3411 North Kenton Street, Floor 2, Chicago, Cook County, Illinois, United States of America; both Plaintiffs were residents of Illinois during all relevant times of this action. JOSE LOUIS DURAN and EVELYN TORRES are the natural parents of E.D., a minor.

4. Defendant, PATRICIA LUTHER, who is a natural person, was a duly-appointed police officer in the Chicago Police Department, City of Chicago, Cook County, State of Illinois at all times relevant to this Complaint.

5. Defendant TINA FIGUEROA-MITCHELL, who is a natural person, was a duly-appointed police officer in the Chicago Police Department, City of Chicago, Cook County, State of Illinois at all times relevant to this Complaint.

6. Defendant CITY OF CHICAGO is a municipal corporation, organized under the laws of the State of Illinois. It operates the Chicago Police Department and is thereby responsible for the training and supervision of police officers and the implementation, enforcement of policies, procedures, and practices of Chicago police officers. It was also the public employer of Defendants Officer PATRICIA LUTHER and Officer TINA FIGUEROA-MITCHELL at all times relevant to this Complaint.

7. Defendant OFFICER PATRICIA LUTHER and Officer TINA FIGUEROA-MITCHELL and others not presently known to the plaintiff were, at all times material to this Complaint, duly appointed CITY OF CHICAGO police officers of unknown rank acting the in the course and scope of their employment.

8. Plaintiff sues all public employees in their official and individual capacities.

4

9.     At all times material to this Complaint, Defendants Officer PATRICIA L. LUTHER and Officer TINA FIGUEROA-MITCHELL acted toward plaintiff under color of the statutes, ordinances, customs, and usage of the State of Illinois, City of Chicago and the Chicago Police Department.

## FACTS

10.    The CITY OF CHICAGO is a municipal corporation doing business within the County of Cook, State of Illinois.

11.    The CITY OF CHICAGO owns and operates the CHICAGO POLICE DEPARTMENT.

12.    On November 28, 2005 and at all times relevant to this case, the CITY OF CHICAGO employed police officer PATRICIA L. LUTHER and during all alleged acts and omissions referenced in this complaint officer LUTHER acted within the course and scope of her employment.

13.    On November 28, 2005 and at all times relevant to this case, the CITY OF CHICAGO employed police officer TINA FIGUEROA-MITCHELL and during all alleged acts and omissions referenced in this complaint, officer FIGUEROA-MITCHELL acted within the course and scope of her employment.

14.    On November 28, 2005 and at all times relevant to this case, the CITY OF CHICAGO, by and through its Police Chief and managing officers, was responsible for supervising the police work of PATRICIA L. LUTHER and TINA FIGUEROA-MITCHELL.

15.    On November 28, 2005 and at all times relevant to this case, the CITY OF CHICAGO, by and through its Police Chief and managing officers, was responsible for training PATRICIA L. LUTHER and TINA FIGUEROA-MITCHELL on its policies and proper police procedures.

16.     On November 28, 2005 and at all times relevant to this case, the CITY OF
        CHICAGO, by and through its Police Chief and managing officers, was
        responsible for implementing and enforcing appropriate policies and procedures
        for the administration of polygraph tests and the reporting of results.

17.     E.D., date of birth May 16, 2005, is the natural born daughter of JOSE LOUIS
        DURAN and EVELYN TORRES.

18.     On November 15, 2005, JOSE LOUIS DURAN took E.D. to El Mundo Futuro
        Day Care for day care services to be rendered while he and EVELYN TORRES
        were at work.

19.     On November 15, 2005, E.D. was 6 months of age.

20.     On November 15, 2005, E.D. was not able to crawl or walk.

21.     On November 15, 2005, at approximately 5:00 p.m. Maria Barrera, the El Mundo
        Futuro Day Care owner and operator, called EVELYN TORRES and told her that
        her baby, E.D., was crying.

22.     Some time afterwards, Maria Barrera also called JOSE LOUIS DURAN to notify
        him of the situation.

23.     He proceeded to El Mundo Futuro day care.

24.     EVELYN TORRES also proceeded to El Mundo Futuro.

25.     EVELYN TORRES arrived at approximately 6:15 P.M.

26.     JOSE LOUIS DURAN arrived at approximately 6:30 p.m.

6

27.     When they arrived, E.D. was crying uncontrollably and bleeding from the mouth.

28.     JOSE LOUIS DURAN and EVELYN TORRES questioned Maria Barrera extensively as to how this could have happened.

29.     They did not receive adequate responses.

30.     Therefore, they rushed E.D. to Swedish Covenant Hospital Emergency Room (ER) for examination.

31.     The time of arrival at Swedish Covenant Hospital was 6:35 p.m.

32.     The child, however, was not examined until 7:00 p.m.

33.     The parents requested x-rays and a full body examination.

34.     Unfortunately, the ER nurse, Cynthia Graham, RN, and the ER physician, Andrew Costello, M.D., focused only on the bleeding and thus examined only the baby's head, neck and mouth.

35.     They did not conduct a full body examination.

36.     No x-rays were done.

37.     Dr. Costello and Nurse Graham both documented in the medical records that the baby had a cut on her tongue.

38.     Neither Dr. Costello nor Nurse Graham documented any examination of the child's arms nor any part of her body other than the head, mouth and neck.

39. In fact, neither Dr. Costello nor Nurse Graham ever removed E.D. from the car seat that her parents used to carry her into the ER.

40. Dr. Costello discharged E.D. at 7:21, just 21 minutes after she was first examined.

41. E.D. thereafter cried all night.

42. The following morning, on November 16, 2005, EVELYN TORRES and JOSE LOUIS DURAN took Evelyn to her family physician, Dr. Sanket Parikh.

43. Dr. Parikh noticed that the child cried when her arms were manipulated.

44. Dr. Parikh sent the child to St. Elizabeth Hospital for x-rays.

45. X-rays revealed that E.D. had fractures of the humerus bones in both of her arms.

46. Hospital personnel called the Illinois Department of Child and Family Services (DCFS) on November 16, 2005 to notify them of potential child abuse.

47. An investigation was started by DCFS.

48. JOSE LOUIS DURAN and EVELYN TORRES fully cooperated with DCFS and answered all of their questions.

49. On or about November 17, 2005, DCFS reported this matter to the Chicago Police Department.

50. On or about November 18, 2005, officer PATRICIA L. LUTHER was assigned to investigate this matter.

51. On or about November 20, 2005, officer PATRICIA LUTHER interviewed EVELYN TORRES and JOSE LOUIS DURAN.

52. PATRICIA LUTHER requested that EVELYN TORRES and JOSE LOUIS DURAN take a polygraph test.

53. JOSE LOUIS DURAN and EVELYN TORRES stated that they would think about it and, if they decided to do it, they would have to call PATRICIA LUTHER at a later time to schedule it because they both had a hard time taking time off from work.

54. Each day thereafter, PATRICIA LUTHER called JOSE LOUIS DURAN on multiple occasions trying to pressure him and EVELYN TORRES to take a polygraph test.

55. On a couple of occasions, PATRICIA LUTHER called late and night, while JOSE LOUIS DURAN and EVELYN TORRES were sleeping, to make requests for them to take polygraph.

56. Officer LUTHER reported to DCFS that the parents were being uncooperative with the police investigation because they had not scheduled polygraph tests.

57. On November 23, 2005, due to the unwarranted representation by LUTHER that the parents were being uncooperative with the investigation, DCFS executed a "safety plan" and removed E.D. from the home of JOSE LOUIS DURAN and EVELYN TORRES and placed her in foster care.

58. On November 25, 2005, JOSE LOUIS DURAN spoke to PATRICIA LUTHER by telephone. Officer LUTHER told JOSE LOUIS DURAN that he and EVELYN TORRES needed to take polygraph tests if they wanted to get their baby back.

9

59. Based upon this representation by officer LUTHER in paragraph 58 above, both JOSE LOUIS DURAN and EVELYN TORRES agreed to take a polygraph test.

60. The polygraph test was scheduled for November 28, 2005.

61. JOSE LOUIS DURAN told officer LUTHER that he understood English well.

62. JOSE LOUIS DURAN told officer LUTHER that EVELYN TORRES did not understand English well and that she would need to take the polygraph in Spanish.

63. On November 28, 2005, at approximately 8:30 p.m., JOSE LOUIS DURAN and EVELYN TORRES presented themselves to the police facility at Belmont and Western on the North side of Chicago to meet with PATRICIA LUTHER for the polygraph test.

64. PATRICIA LUTHER put JOSE LOUIS DURAN and EVELYN TORRES in the back of a police car and transported them to a Chicago Police Department Facility on the South Side of Chicago for a polygraph test.

65. On November 28, 2005, JOSE LOUIS DURAN again requested that the polygraph test of EVELYN TORRES be given in her native language, Spanish.

66. On November 28, 2005, EVELYN TORRES requested that the polygraph test be performed on her in her native language, Spanish.

67. Despite the specific requests to take the polygraph tests in Spanish, all of the polygraph tests administered to EVELYN TORRES were administered in English.

68. Prior to the tests, officer PATRICIA LUTHER told JOSE LOUIS DURAN and EVELYN TORRES repeatedly that they needed to complete polygraph tests or they would not get their baby back.

69. When TINA FIGUEROA-MITCHELL attached the polygraph machine to JOSE LOUIS DURAN, she put the arm cuff on extremely tight.

70. JOSE LOUIS DURAN complained that the arm cuff was too tight.

71. TINA FIGUEROA-MITCHELL ignored that complaint and did not loosen the cuff.

72. When TINA FIGUEROA-MITCHELL attached the polygraph machine to EVELYN TORRES, she put the arm cuff on extremely tight.

73. EVELYN TORRES complained that the arm cuff was too tight.

74. TINA FIGUEROA-MITCHELL ignored that complaint and did not loosen the cuff.

75. On November 28, 2005, after submitting to one polygraph test, officer TINA FIGUEROA-MITCHELL told JOSE LOUIS DURAN that he would have to repeat the test.

76. JOSE LOUIS DURAN felt compelled to agree to repeat the test due to the prior representations of officer LUTHER that he would not get his baby back without it.

77. After completing the first test, JOSE LOUIS DURAN started to feel loss of sensation in his arm due to how tightly the cuff was applied.

78.    On November 28, 2005, after submitting to one polygraph test, officer TINA
       FIGUEROA-MITCHELL told EVELYN TORRES that she would have to repeat
       the test.

79.    EVELYN TORRES felt compelled to agree to repeat the test due to the prior
       representations of officer LUTHER that she would not get her baby back without
       it.

80.    After completing the first polygraph test, EVELYN TORRES started to feel loss
       of sensation in her arm due to how tightly the cuff had been applied.

81.    After the second test TINA FIGUEROA-MITCHELL told EVELYN TORRES
       she would have to repeat the test again.

82.    EVELYN TORRES felt compelled to agree to repeat the test a third time due to
       the prior representations by officer LUTHER that she would not get her baby
       back without it.

83.    Each time the polygraph tests were administered, the same questions were asked.

84.    On November 28, 2005, officer TINA FIGUEROA-MITCHELL administered
       two polygraph tests to JOSE LOUIS DURAN.

85.    On November 28, 2005, officer TINA FIGUEROA-MITCHELL administered
       three polygraph tests to EVELYN TORRES.

86.    After the tests were completed and the arm cuff was finally removed, JOSE
       LOUIS DURAN felt numbness in his arm as a result of how tightly the cuff had
       been applied.

87.    After the tests were completed and the arm cuff was finally removed, EVELYN
       TORRES felt numbness in her arm as a result of how tightly the cuff had been
       applied.

88.    After the tests were completed, officer LUTHER transported JOSE LOUIS
       DURAN and EVELYN TORRES in the back of a police car to the police station
       at Belmont and Western.

89.    On arrival to the police station at Belmont and Western, well after midnight,
       officer LUTHER did not allow JOSE LOUIS DURAN and EVELYN TORRES to
       leave.

90.    LUTHER told them they needed to wait for the results of the polygraph test.

91.    When JOSE LOUIS DURAN raised a concern about the late hour and stated that
       he needed to go home in order to be at work early in the morning, officer
       LUTHER stated that if the two of them did not wait, she would arrest them.

92.    Sometime on or about November 28 or 29, 2005, officer TINA FIGUEROA-
       MITCHELL advised officer PATRICIA LUTHER that JOSE LOUIS DURAN
       and EVELYN TORRES failed their polygraph tests.

93.    After waiting at the station for some time, officer LUTHER called EVELYN
       TORRES into her office and told her she failed the polygraph test.

94.    Officer LUTHER then started yelling at EVELYN TORRES that she was guilty
       of abuse of her child and that she should admit it.

95.    Officer LUTHER asked EVELYN TORRES to come closer to her and then
       pushed EVELYN TORRES two times as she continued to yell at EVELYN
       TORRES that she was guilty of harming her own child.

96.     EVELYN TORRES responded by telling officer LUTHER to stop pushing her.

97.     Officer LUTHER then replied, "What are you going to do about it?"

98.     Officer LUTHER, under the threat of arresting TORRES if she did not cooperate, continued to interrogate her about what happened to the child.

99.     Officer LUTHER did not advise Ms. TORRES of her right to counsel or of any other *Miranda* rights.

100.    At all times during this abusive and warrantless interrogation, EVELYN TORRES told officer LUTHER that neither she nor her husband harmed their child in any way.

101.    Shortly thereafter, officer LUTHER told EVELYN TORRES to wait outside and she asked JOSE LOUIS DURAN to come into her office.

102.    She shut the door and told JOSE LOUIS DURAN that he had failed the polygraph test and that he should admit that he was guilty of harming his child.

103.    Officer LUTHER, under the threat of arresting Mr. DURAN if he did not cooperate, continued to interrogate him in a loud and abusive manner about what happened to the child.

104.    Officer LUTHER did not advise Mr. DURAN of his right to counsel or of any other *Miranda* rights.

105.    JOSE LOUIS DURAN stated, as he had repeatedly stated previously, that neither he nor his wife harmed their child in any way.

106.    In the manner described above, JOSE LOUIS DURAN and EVELYN TORRES were detained by officer LUTHER until approximately 2:30 a.m. on November 29, 2005.

Pleading further, hypothetically and in the alternative, in paragraphs 107 and 108:

107.    Officer LUTHER did not advise officer TINA FIGUEROA-MITCHELL that JOSE LOUIS DURAN and EVELYN TORRES had requested that the polygraph test to be performed on EVELYN TORRES be administered in Spanish.

108.    Alternatively, officer TINA FIGUEROA-MITCHELL was made aware of plaintiffs' request for EVELYN TORRES to take the polygraph test in Spanish and TINA FIGUEROA-MITCHELL ignored this request.

109.    Officer TINA FIGUEROA-MITCHELL did not conduct formal pre-test interviews with JOSE LOUIS DURAN and EVELYN TORRES before administering the polygraph tests.

110.    Officer TINA FIGUEROA-MITCHELL did not do any formal evaluation of EVELYN TORRES' proficiency with the English language before administering the polygraph tests to determine whether she needed to take the test in Spanish.

111.    Officer TINA FIGUEROA-MITCHELL did not do any formal evaluation of LOUIS DURAN's proficiency with the English language before administering the polygraph tests to determine whether the test should be done in Spanish.

Pleading further, hypothetically and in the alternative, in paragraphs 112 through 123:

112.    Officer TINA FIGUEROA-MITCHELL did not advise officer LUTHER, or allow officer LUTHER to observe, that two polygraph tests were performed on JOSE LOUIS DURAN.

113. Alternatively, officer TINA FIGUEROA-MITCHELL did advise officer LUTHER, or allow officer LUTHER to observe, that two polygraph tests were performed on JOSE LOUIS DURAN.

114. Officer TINA FIGUEROA-MITCHELL did not provide officer LUTHER the results of both of the polygraph tests performed on JOSE LOUIS DURAN.

115. Alternatively, officer TINA FIGUEROA-MITCHELL did provide officer LUTHER the results of both of the polygraph tests performed on JOSE LOUIS DURAN.

116. Officer TINA FIGUEROA-MITCHELL did not advise officer LUTHER, or allow officer LUTHER to observe, that three polygraph tests were performed on EVELYN TORRES.

117. Alternatively, officer TINA FIGUEROA-MITCHELL did advise officer LUTHER, or allow officer LUTHER to observe, that three polygraph tests were performed on EVELYN TORRES.

118. Officer TINA FIGUEROA-MITCHELL did not provide officer LUTHER the results of all three of the polygraph tests performed on EVELYN TORRES.

119. Alternatively, officer TINA FIGUEROA-MITCHELL did provide officer LUTHER the results of all three of the polygraph tests performed on EVELYN TORRES.

120. Officer TINA FIGUEROA-MITCHELL did not advise officer LUTHER, or allow officer LUTHER to observe, that all three polygraph tests performed on EVELYN TORRES were in English rather than Spanish.

16

121. Alternatively, officer TINA FIGUEROA-MITCHELL did advise officer LUTHER, or allow officer LUTHER to observe, that all three polygraph tests performed on EVELYN TORRES were in English rather than Spanish.

122. Officer TINA FIGUEROA-MITCHELL did not advise officer LUTHER, or allow officer LUTHER to observe, that both polygraph tests performed on JOSE LOUIS DURAN were in English rather than Spanish.

123. Alternatively, officer TINA FIGUEROA-MITCHELL did advise officer LUTHER, or allow officer LUTHER to observe, that both polygraph tests performed on JOSE LOUIS DURAN were in English rather than Spanish.

124. On November 29, 2005 or at some time shortly thereafter, officer LUTHER advised Nancy Rodriguez, the DCFS investigator, that both JOSE LOUIS DURAN and EVELYN TORRES failed their respective polygraph tests and that both were being deceptive in their answers.

125. On November 29, 2005 or at some time prior to December 23, 2005, officer LUTHER advised Michele Lorand, M.D., a pediatrician designated to prepare an MPEEC report in the case of E.D., that both JOSE LOUIS DURAN and EVELYN TORRES failed their respective polygraph tests and that both were being deceptive in their answers.

126. Officer LUTHER did not provide Nancy Rodriguez, nor any other DCFS personnel, any written documents or reports indicating the results of the polygraph tests taken by JOSE LOUIS DURAN and EVELYN TORRES.

127. Officer LUTHER did not provide Michele Lorand, M.D. any written documents or reports indicating the results of the polygraph tests taken by JOSE LOUIS DURAN and EVELYN TORRES.

128.   On December 23, 2005, Michele Lorand, M.D. submitted her MPEEC report to
       DCFS and to the State's Attorney's investigating the case of E.D. *See Exhibit 1
       to be filed separately under seal pending approval of the Juvenile Court. 705
       ILCS 405/1-8.*

129.   On January 21, 2006, the State of Illinois filed a Petition to Adjudicate Wardship
       as to the minor, E.D., with the parents, EVELYN TORRES and JOSE LOUIS
       DURAN, as respondents, in the Circuit Court of Cook County, Juvenile Child
       Protection Division, Calendar D.

130.   Discovery proceeded thereafter.

131.   On June 6, 2006, counsel for JOSE LOUIS DURAN filed and served a subpoena
       to the Chicago Police Department for all police records concerning the
       investigation conducted by police relative to the injuries sustained by E.D.,
       including, but not limited to, all records, reports, graphs, notes or materials of any
       kind pertaining to polygraph tests performed on EVELYN TORRES and JOSE
       LOUIS DURAN. *See Exhibit 2 to be filed separately under seal pending
       approval of the Juvenile Court.*

132.   Response to this subpoena was received on July 14, 2006.

133.   The police reports and records produced are attached hereto and incorporated by
       reference. *See Exhibit 3 to be filed separately under seal.*

134.   In her reports, officer LUTHER states that both EVELYN TORRES and JOSE
       LOUIS DURAN failed their polygraph tests with deception indicated for both.

135.   However, there is no report, contained within the records produced, prepared by
       the polygraph examiner, TINA FIGUEROA-MITCHELL, of the results of the
       polygraph tests performed on plaintiffs.

136. None of officer LUTHER's reports, nor any other report in the records produced, indicate that JOSE LOUIS DURAN took two polygraph tests and that EVELYN TORRES took three polygraph tests.

137. None of officer LUTHER'S reports, nor any other records produced, indicate the results of both of the polygraph tests taken by JOSE LOUIS DURAN and all three of the polygraph tests taken by EVELYN TORRES.

138. None of officer LUTHER'S reports, nor any other records produced, indicate that both of the polygraph tests taken by JOSE LOUIS DURAN and all three of the polygraph tests taken by EVELYN TORRES were given in English rather than Spanish.

139. After the Chicago Police Department records were obtained via subpoena, counsel for JOSE LOUIS DURAN produced them to the parties in the Juvenile Child Protection Action pertaining to E.D.

140. On July 28, 2006, after all discovery had been completed, all parties to the Juvenile Court Proceeding appeared for the first of two scheduled days of final hearing of the Petition for Adjudication of Wardship pertaining to E.D..

141. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Nancy Rodriguez, nor anyone at DCFS, that two polygraph tests were performed on JOSE LOUIS DURAN.

142. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Nancy Rodriguez, nor anyone else at DCFS, that three polygraph tests were performed on EVELYN TORRES.

143. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Nancy Rodriguez, nor anyone else at DCFS, that the polygraph tests performed on EVELYN TORRES were performed in English rather than Spanish.

144. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Nancy Rodriguez, nor anyone else at DCFS, that the polygraph tests performed on LOUIS DURAN were performed in English rather than Spanish.

145. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Michele Lorand, M.D. that the polygraph tests performed on EVELYN TORRES were performed in English rather than Spanish.

146. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Michele Lorand, M.D. that the polygraph tests performed on LOUIS DURAN were performed in English rather than Spanish.

147. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Nancy Rodriguez, nor anyone else at DCFS, of the results of both polygraph tests done on JOSE LOUIS DURAN.

148. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise Nancy Rodriguez, nor anyone else at DCFS, of the results of all three of the polygraph tests done on EVELYN TORRES.

149. Officer PATRICIA LUTHER never advised Michele Lorand, M.D. of the results of both polygraph tests done on JOSE LOUIS DURAN.

150. Officer PATRICIA LUTHER never advised Michele Lorand, M.D. of the results of all three of the polygraph tests done on EVELYN TORRES.

151. Officer PATRICIA LUTHER never advised the Illinois State's Attorney dealing with the juvenile child protection action of the results of both polygraph tests done on JOSE LOUIS DURAN;

152. Officer PATRICIA LUTHER never advised the Illinois State's Attorney dealing with the juvenile child protection action of the results of all three polygraph tests done on EVELYN TORRES.

153. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise the Illinois State's Attorney dealing with the juvenile child protection action of the fact that the polygraph tests done on EVELYN TORRES were done in English rather than her native Spanish;

154. Prior to July 28, 2006, officer PATRICIA LUTHER did not advise the Illinois State's Attorney dealing with the child protection matter that the polygraph tests done on JOSE LOUIS DURAN were done in English rather than his native Spanish.

155. Officer TINA FIGUEROA-MITCHELL was aware, at the time that she conducted the polygraph tests on JOSE LOUIS DURAN and EVELYN TORRES, that an investigation was being conducted by DCFS and the State's Attorney's Office to determine whether to petition the court to remove the child, E.D., from the custody of the parents permanently or for a significant period of time.

156. Officer TINA FIGUEROA was aware, at the time she conducted the polygraph tests on JOSE LOUIS DURAN and EVELYN TORRES, that the results of the polygraph tests would be communicated by officer LUTHER to DCFS and the Illinois State's Attorney for use in the DCFS investigation.

157. Officer TINA FIGUEROA-MITCHELL was aware, at the time she conducted the polygraph tests at issue, that, DCFS does not perform polygraph tests.

158. Officer TINA FIGUEROA-MITCHELL was aware, at the time she conducted the polygraph tests at issue, that DCFS and the Illinois State's Attorneys would rely upon the accuracy of the results of the police polygraph tests.

159. Officer TINA FIGUEROA-MITCHELL was aware, at the time she conducted the polygraph tests at issue, that disclosure of any and all information to DCFS and the Illinois State's Attorneys concerning the circumstances and results of all tests she performed would be vitally important so that DCFS and the Illinois State's Attorney could properly consider the weight or validity to give the results.

160. Officer PATRICIA LUTHER was aware, at the time she reported the results of the polygraph tests to DCFS, the MPEEC physician and the Illinois State's Attorneys, that these parties would use the results in their investigations.

161. Officer PATRICIA LUTHER was aware, at the time she reported the results of the polygraph tests at issue to DCFS, the MPEEC physician and the Illinois State's Attorneys in the child protection action that these parties would rely upon the accuracy of the results of the police polygraph tests.

162. Officer PATRICIA LUTHER was aware, at the time she reported the results of the polygraph tests at issue to DCFS, that an investigation was being conducted by DCFS and the State's Attorney's Office to determine whether to petition the court to remove the child from the parents permanently or for a significant period of time.

163. Officer PATRICIA LUTHER was aware, at the time she reported the results of the polygraph tests at issue to DCFS, the MPEEC physician and the Illinois State's Attorney that disclosure of any and all information to these parties concerning the circumstances of the tests as well as all results would be vitally

important so that DCFS, the MPEEC physician and the Illinois State's Attorneys could properly consider the weight or validity to give the results.

164. Officer PATRICIA LUTHER was aware, at the time she reported the results of the polygraph tests at issue to Michele Lorand, M.D., that Dr. Lorand would rely upon the accuracy of the results of the police polygraph tests in rendering opinions to DCFS.

165. On September 7, 2006, the MPEEC physician, Michele Lorand, M.D., filed an affidavit indicating that, on August 21, 2006, after the beginning of the adjudication hearing on July 28, 2006, she was provided additional information that was not provided to her prior to the date of her December 23, 2005 MPEEC report. That affidavit is incorporated herein by reference as if set forth in full. *See Exhibit 4 to he filed separately under seal pending approval of the Juvenile Court.*

166. One of the new pieces of information provided to Dr. Lorand on August 21, 2006 is that the polygraph tests done on plaintiffs were done in English rather than their native Spanish.

167. The information in paragraph 167 is information that was known to PATRICIA LUTHER, TINA FIGUEROA-MITCHELL and the CHICAGO POLICE DEPARTMENT, well before the date of Dr. Lorand's December 23, 2005 MPEEC report, and was intentionally and maliciously withheld and not provided to Dr. Lorand.

168. Even as of August 21, 2006, Dr. Lorand was never advised by PATRICIA LUTHER, TINA-FIGUEROA-MITCHELL or the CHICAGO POLICE DEPARTMENT that JOSE LOUIS DURAN and EVELYN TORRES were subjected to multiple polygraph tests.

169. Even as of August 21, 2006, Dr. Lorand was never advised by PATRICIA LUTHER, TINA-FIGUEROA-MITCHELL or the CHICAGO POLICE DEPARTMENT of the results of all of the polygraph tests performed on plaintiffs so she could properly determine what weight, if any, to give the results.

170. On September 7, 2006, the People of the State of Illinois, by and through the Illinois State's Attorney, voluntarily dismissed their Petition to Adjudicate Wardship, filed against the plaintiffs herein, and, based upon this, the Court vacated the temporary guardianship of DCFS over the child. *See Exhibit 5 to be filed separately under seal.*

171. E.D. was thereafter promptly returned to the custody of her natural parents, JOSE LOUIS DURAN and EVELYN TORRES.

172. During the pendency of the various investigations and the Juvenile court action, E.D. was separated from her natural parents from November 23, 2005 through September 7, 2006, the 6th through 15th months of her young life.

**COUNT 1: <u>VIOLATIONS OF 42 U.S.C. 1983: False Detention and Confinement and Unreasonable and Warrantless Search by Officer LUTHER</u>**

173. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 172 above with the same force and effect as if herein set forth.

174. At all times relevant herein, the conduct of officer LUTHER and her employer, the CITY OF CHICAGO, were subject to 42 U.S.C. sec. 1983.

175. Acting under the color of law, Defendants LUTHER and her employer, the CITY OF CHICAGO, maliciously, willfully and wantonly and/or with reckless indifference, worked a denial of plaintiffs' rights, privileges and immunities secured by the United States Constitution or by Federal law, through the following acts and omissions:

24

a.  depriving JOSE LOUIS DURAN and EVELYN TORRES. of their liberty without due process of law by holding them against their will, at a remote location, for repeated polygraph tests by using the threat that they would not get their baby back unless they submitted to and passed these tests;

b.  depriving JOSE LOUIS DURAN and EVELYN TORRES of their liberty without due process of law during the post-polygraph test interrogation by holding them against their will with threats to arrest them if they did not comply;

c.  failing to arrange for EVELYN TORRES to take her polygraph test in Spanish

d.  conducting an unreasonable, warrantless detention for purposes of interrogation without advising plaintiffs of their *Miranda* rights and without due process of law,

e.  failing to prevent such deprivations and denials to plaintiffs, thereby depriving plaintiffs of their rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

176. As a result of their the acts and omissions of Defendants, officer PATRICIA LUTHER: Plaintiffs were deprived of their liberty without due process of law and their right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983; and proceedings were instituted in the Juvenile court against Plaintiffs that removed E.D. from their custody for more than 8 months; thereby causing plaintiffs to suffer severe emotional distress, mental pain, anguish, humiliation and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful separation from their baby at a very critical stage in the parent-baby bonding process;

WHEREFORE, Plaintiffs demand judgment for the false detention and confinement and unreasonable and warrantless interrogation and seizure against the Defendants PATRICIA LUTHER and the CITY OF CHICAGO jointly and severally, for actual, special and compensatory damages in the amount of $1,000,000 and further demands judgment against each of said defendants, jointly and severally, for punitive damages in the amount of $1,000,000 plus the costs of this action, including attorney's fees and such other relief to which Plaintiffs may show themselves justly entitled.

## COUNT 2: VIOLATIONS OF 42 U.S.C. 1983: Due Process Violations and Hiding Exculpatory Information by TINA FIGUEROA-MITCHELL

177. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 176 above with the same force and effect as if herein set forth.

178. At all times relevant herein, the conduct of all Defendants TINA FIGUEROA-MITCHELL and the CITY OF CHICAGO were subject to 42 U.S.C. sec. 1983.

179. Acting under the color of law and in the course and scope of her employment for the CITY OF CHICAGO, Defendants, TINA FIGUEROA-MITCHELL maliciously, willfully and wantonly and/or with reckless indifference worked a denial of plaintiffs' rights, privileges and immunities secured by the United States Constitution or by Federal law, through the following acts and omissions:

    a. failing to follow appropriate procedures to administer polygraph tests;

    b. administering polygraph tests to plaintiffs without conducting a formal evaluation as to their proficiency with and understanding of the English language;

    c. failing to perform an adequate pre-test interview;

    d. failing to heed a requests for EVELYN TORRES to take her polygraph test in Spanish;

    e. administering multiple polygraph tests upon plaintiffs rather than the single test each plaintiff consented to take;

f.   reporting to officer LUTHER and, by and through LUTHER, to DCFS, the MPEEC physician and the Illinois State's Attorney that JOSE LOUIS DURAN and EVELYN TORRES failed their polygraph tests;

g.   failing to reveal to DCFS, the MPEEC physician and the Illinois State's Attorney that the polygraph tests were conducted in English rather than the plaintiffs' native Spanish so these agencies and individuals could properly determine what weight to give the results, if any;

h.   failing to reveal to DCFS, the MPEEC physician and the Illinois State's Attorney that each plaintiff was required to take more than one polygraph test so that these agencies and individuals could properly determine what weight to give the results, if any;

i.   failing to report the circumstances and results of all of the polygraph tests to DCFS, the MPEEC physician and the Illinois State's Attorney so that these agencies and individuals could properly determine what weight to give the results, if any;

j.   failing to provide formal written reports of the results of all of the polygraph tests to DCFS, the MPEEC physician and the Illinois State's Attorney so that these agencies and individuals could properly determine what weight to give the results, if any.

180.   As a result of the denial of due process rights of the plaintiffs and to hide exculpatory information: officer TINA FIGUEROA-MITCHELL deprived JOSE LOUIS DURAN and EVELYN TORRES of both their right to due process of law and their right to equal protection of the laws; the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983; and proceedings were instituted in the Juvenile court against Plaintiffs that removed E.D. from their custody for more than 8 months; thereby causing plaintiffs to suffer severe emotional distress, mental pain, anguish, humiliation and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful

separation from their baby at a very critical stage in the parent-baby bonding process;

WHEREFORE, Plaintiffs demand judgment for the malicious denial of due process rights by hiding exculpatory information against the Defendants, TINA FIGUEROA-MITCHELL and THE CITY OF CHICAGO, jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 3, VIOLATIONS OF 42 U.S.C. 1983: Due Process Violaitons and Hiding Exculpatory Information by PATRICIA LUTHER

181.    Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 180 above with the same force and effect as if herein set forth.

182.    At all times relevant herein, the conduct of all Defendants PATRICIA LUTHER and the CITY OF CHICAGO were subject to 42 U.S.C. sec. 1983.

183.    Acting under the color of law, Defendants, officer PATRICIA LUTHER and her employer, the CITY OF CHICAGO by and through their actions, maliciously, willfully and wantonly and/or with reckless indifference, worked a denial of plaintiffs' rights, privileges and immunities secured by the United States Constitution or by Federal law, through the following acts and omissions:

    a. giving false, incomplete or misleading information concerning polygraph results of plaintiffs to DCFS, MPEEC and the Illinois State's Attorney handling the juvenile child protection matter for the unlawful purpose of violating the constitutional rights of EVELYN TORRES and JOSE LOUIS DURAN and for the purpose of causing them to lose custody of their child;

b. reporting to DCFS, the MPEEC physician and the Illinois State's Attorney that JOSE LOUIS DURAN and EVELYN TORRES failed their polygraph tests;

c. failing to timely reveal to DCFS, the MPEEC physician and the Illinois State's Attorney that the polygraph tests were conducted in English rather than the plaintiffs' native Spanish so these agencies and individuals could properly determine what weight to give the results, if any;

d. withholding information from DCFS, the MPEEC physician and the Illinois State's Attorney that each plaintiff was required to take more than one polygraph test so that these agencies and individuals could properly determine what weight to give the results, if any;

e. withholding the results of all of the polygraph tests to DCFS, the MPEEC physician and the Illinois State's Attorney so that these agencies and individuals could properly determine what weight to give the results, if any;

f. withholding formal written reports of the results of all of the polygraph tests to DCFS, the MPEEC physician and the Illinois State's Attorney so that these agencies and individuals could properly determine what weight to give the results, if any.

184. As a result of the above unlawful, willful, wanton and malicious acts and omissions to violate due process rights of the plaintiffs and to hide exculpatory information concerning JOSE LOUIS DURAN and EVELYN TORRES, defendant officer PATRICIA LUTHER deprived JOSE LOUIS DURAN and EVELYN TORRES of both their right to due process of law and their right to equal protection of the laws. Further, the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

185. As a direct proximate result of the acts, omissions of defendants, individually and in a conspiracy with each other, proceedings were instituted in the Juvenile court against Plaintiffs that removed E.D. from their custody for more than 8 months; thereby causing plaintiffs to suffer severe emotional distress, mental pain,

anguish, humiliation and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful separation from their baby at a very critical stage in the parent-baby bonding process;

WHEREFORE, for the malicious conspiracy and individual actions of the defendants to deny due process rights by hiding exculpatory information, Plaintiffs demand judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 4, VIOLATIONS OF 42 U.S.C. 1983: Due Process Violaitons Under the 4th 4nd 14th Amendments for Conspiracy to Hide Exculpatory Information

186. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 185 above with the same force and effect as if herein set forth.

187. At all times relevant herein, the conduct of all Defendants PATRICIA LUTHER, TINA FIGUEROA-MITCHELL and the CITY OF CHICAGO were subject to 42 U.S.C. sec. 1983.

188. Acting under the color of law, Defendants, officer PATRICIA LUTHER, TINA FIGUEROA-MITCHELL and the their employer, the CITY OF CHICAGO, maliciously, willfully and wantonly and/or with reckless indifference worked a denial of plaintiffs' rights, privileges and immunities secured by the United States Constitution or by Federal law, through the following acts and omissions:

    a. Acting individually, or in a conspiracy with each other, to gave false, incomplete or misleading information concerning polygraph results of plaintiffs to DCFS, MPEEC and the Illinois State's Attorney handling the juvenile child protection matter for the unlawful purpose of violating the constitutional rights of EVELYN TORRES and JOSE LOUIS DURAN and for the purpose of causing them to lose custody of their child;

b. reporting to DCFS, the MPEEC physician and the Illinois State's Attorney that JOSE LOUIS DURAN and EVELYN TORRES failed their polygraph tests;

c. failing to timely reveal to DCFS, the MPEEC physician and the Illinois State's Attorney that the polygraph tests were conducted in English rather than the plaintiffs' native Spanish so these agencies and individuals could properly determine what weight to give the results, if any;

d. withholding information from DCFS, the MPEEC physician and the Illinois State's Attorney that each plaintiff was required to take more than one polygraph test so that these agencies and individuals could properly determine what weight to give the results, if any;

e. withholding the results of all of the polygraph tests to DCFS, the MPEEC physician and the Illinois State's Attorney so that these agencies and individuals could properly determine what weight to give the results, if any;

f. withholding formal written reports of the results of all of the polygraph tests to DCFS, the MPEEC physician and the Illinois State's Attorney so that these agencies and individuals could properly determine what weight to give the results, if any.

189. As a result of their unlawful and malicious conspiracy to violate due process rights of the plaintiffs and to hide exculpatory information concerning JOSE LOUIS DURAN and EVELYN TORRES, Defendants Officer PATRICIA LUTHER and Officer TINA FIGUEROA-MITCHELL deprived JOSE LOUIS DURAN and EVELYN TORRES of both their right to due process of law and their right to equal protection of the laws. Further, the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

190. As a direct proximate result of the acts, omissions of defendants, individually and in a conspiracy with each other, proceedings were instituted in the Juvenile court against Plaintiffs that removed E.D. from their custody for more than 8 months; thereby causing plaintiffs to suffer severe emotional distress, mental pain,

anguish, humiliation and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful separation from their baby at a very critical stage in the parent-baby bonding process;

WHEREFORE, for the malicious conspiracy and individual actions of the defendants to deny due process rights by hiding exculpatory information, Plaintiffs demand judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 5: <u>VIOLATIONS OF 42 U.S.C. 1983: Due Process Violations by the CITY OF CHICAGO Under the 4th and 14th Amendements</u>

191.    Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 190 above with the same force and effect as if herein set forth.

192.    At all times relevant herein, the conduct of all Defendants were subject to 42 U.S.C. sec. 1983.

193.    Acting under the color of law, Defendant, the CITY OF CHICAGO, by and through the acts and omissions of its employees and/or agents supervisors, managers, Police Chief an Police Commissioner, worked a denial of plaintiffs' rights, privileges and immunities secured by the United States Constitution or by Federal law, through the following acts and omissions:

   a.   Failing to properly supervise and monitor the administration of polygraph tests performed on plaintiffs to ensure adherence with proper testing procedures;

b. failing to properly supervise the interpretation and documentation of the results of the polygraph tests to ensure complete and accurate interpretation and reporting of the results;

c. failing to properly supervise the reporting of the results of the polygraph tests of plaintiffs to DCFS, MPEEC and the Illinois State's Attorney to ensure that the information transmitted was accurate and complete;

d. failing to properly train officer FIGUEROA-MITCHELL on the proper procedures for administration of polygraph tests to persons such as plaintiffs;

e. failing to properly train officer FIGUEROA-MITCHELL on the proper procedure for interpreting a polygraph test given to persons such as plaintiffs;

f. failing to properly train officers FIGUEROA-MITCHELL and LUTHER on the proper procedures for complete and accurate reporting of results in circumstances like those of the plaintiffs herein.

194. As a result of their violations due process rights of the plaintiffs, the CITY OF CHICAGO deprived JOSE LOUIS DURAN and EVELYN TORRES of both their right to due process of law and their right to equal protection of the laws. Further, the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

195. As a direct proximate result of the acts, omissions of defendants, proceedings were instituted in the Juvenile court against Plaintiffs that removed E.D. from their custody for more than 8 months; thereby causing plaintiffs to suffer severe emotional distress, mental pain, anguish, humiliation and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful separation from their baby at a very critical stage in the parent-baby bonding process;

33

WHEREFORE, Plaintiff demands judgment for the conspiracy against all the CITY OF CHICAGO for compensatory damages in the amount of one million dollars ($1,000,000), plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 6: MALICIOUS PROSECUTION

196. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 195 above with the same force and effect as if herein set forth.

197. Defendants willfully, wantonly and with malice instituted a legal process against the plaintiffs to remove their child, E.D., from their custody:

    a. Officers TINA FIGUEROA-MITCHELL and PATRICIA LUTHER played an active role in the initiation of the juvenile child protection proceedings wherein JOSE LOUIS DURAN and EVELYN TORRES were named as respondents and the ultimate goal was to adjudicate E.D. a Ward of the State;

    b. Officers TINA FIGUEROA-MITCHELL and PATRICIA LUTHER maliciously and with willful and wanton disregard for accuracy reported false and misleading information to DCFS, the MPEEC and the Illinois State's Attorney regarding polygraph test results that were used as a basis for instituting the juvenile child protection proceedings wherein JOSE LOUIS DURAN and EVELYN TORRES were named as respondents and the ultimate goal was to adjudicate E.D. a Ward of the State;

    c. Without the false and misleading polygraph test results given by TINA FIGUEROA-MITCHELL and PATRICIA LUTHER to DCFS, MPEEC and the Illinois State's Attorney, a person of ordinary prudence would not conclude that there was probable cause to bring the child protection action against JOSE LOUIS DURAN and EVELYN TORRES;

d. The juvenile child protection action was ultimately terminated in favor of JOSE LOUIS DURAN and EVELYN TORRES and their child E.D. was returned to the custody of the parents.

198. As a direct proximate result of the acts, omissions of defendants, proceedings were instituted in the Juvenile court against Plaintiffs that removed E.D. from their custody for more than 8 months; thereby causing plaintiffs to suffer severe emotional distress, mental pain, anguish, humiliation and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful separation from their baby at a very critical stage in the parent-baby bonding process;

WHEREFORE, Plaintiffs demand judgment against all Defendants for actual, special, compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate, plus costs.

### COUNT 7: ASSAULT: by Officer LUTHER against EVELYN TORRES

199. EVELYN TORRES repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 198 above with the same force and effect as if herein set forth.

200. EVELYN TORRES is a reasonable person.

201 Defendant Officer LUTHER, maliciously and willfully and wantonly created an apprehension of immediate physical harm by means of yelling at her and pushing her in an abusive manner for no known purpose other than to create in EVELYN TORRES an apprehension of immediate physical harm.

202. Any reasonable person would also become apprehensive in the face of defendants' threatening conduct.

203. As a direct proximate result of the acts, EVELYN TORRES suffered apprehension of physical harm, mental anguish and fear.

WHEREFORE, Plaintiff, EVELYN TORRES, demands judgment against Defendants Officer LUTHER and the CITY OF CHICAGO for actual, special, and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate, plus costs.

## COUNT 8: BATTERY: by officer LUTHER against EVELYN TORRES

204. EVELYN TORRES repeats, re-alleges and incorporates by reference the allegations in paragraphs 1 through 203 above with the same force and effect as if herein set forth.

205. Without the consent of EVELYN TORRES, Defendant Officer LUTHER intentionally, harmfully, and offensively touched EVELYN TORRES by pushing her twice while yelling at her that she was guilty of injuring her child;

206. As a direct proximate result of the acts and omission of defendant, EVELYN TORRES suffered physical harm, mental anguish and fear.

WHEREFORE, Plaintiff, EVELYN TORRES, demands judgment against Defendants officer LUTHER and the CITY OF CHICAGO for actual, special, and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate, plus costs.

## COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS by Officer LUTHER

207. Plaintiffs repeat, re-allege and incorporate by reference the allegations in paragraphs 1 through 206 above with the same force and effect as if herein set forth.

208. Defendant officer LUTHER willfully and wantonly inflicted emotional distress on EVELYN TORRES and JOSE LOUIS DURAN by maliciously prosecuting them, or by abusing the legal process by unlawful purpose, or by violating plaintiff's constitutional rights, or by falsely detaining and interrogating the plaintiffs, by conspiring against plaintiffs, by pushing EVELYN TORRES and by interfering with plaintiff's state civil rights through the use of threats, coercion, or intimidation;

209. Officer LUTHER knew or should have known that emotional distress would likely result from her conduct.

210. Defendants conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

211. The actions of the Defendant officer LUTHER were the cause of severe emotional distress to EVELYN TORRES and JOSE LOUIS DURAN.

212. JOSE LOUIS DURAN is a reasonable person.

213. EVELYN TORRES is a reasonable person.

214. The emotional distress sustained by JOSE LOUIS DURAN and EVELYN TORRES was severe and of a nature that no reasonable person could be expected to endure.

215. As a result of the Defendants' extreme and outrageous conduct, Plaintiffs have suffered severe emotional distress, mental pain, anguish, humiliation and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful separation from their baby at a very critical stage in the parent-baby bonding process;

216. Plaintiffs will continue to suffer emotion distress, mental anguish and trauma from the separation in the future;

217. Defendants CITY OF CHICAGO are liable under the doctrine of respondeat superior.

WHEREFORE, Plaintiff demands judgment, including interest, jointly and severally against Defendants officer LUTHER and the CITY OF CHICAGO in an amount deemed by this Court to be just and fair and in any other way in which the Court deems appropriate.

## COUNT 10: DEFAMATION PER SE

218. Plaintiffs repeat and re-allege and incorporate by reference the allegations in paragraphs 1 through 217 above with the same force and effect as if herein set forth.

219. Defendants maliciously and with willful, wanton and reckless disregard for the truth, reported false, inaccurate and misleading polygraph test results to DCFS, MPEEC and the Illinois State's Attorneys handling the investigation and prosecution of a child protection action concerning, E.D., daughter of EVELYN. TORRES and JOSE LOUIS DURAN.

220. The report given by officers TINA FIGUEROA-MITCHELL and PATRICIA LUTHER is that both EVELYN TORRES and JOSE LOUIS DURAN failed their respective polygraph tests and were deceptive in answering questions when asked whether they injured their own child.

221. This report was defamatory and made with the intent to convey to DCFS, MPEEC and the Illinois State's Attorney that EVELYN TORRES and JOSE LOUIS DURAN were guilty of a serious crime against their child;

222. The report proximately cause or contributed to cause the naming of JOSE LOUIS DURAN and EVELYN TORRES as respondents in an action by the State of Illinois to Adjudicate the Wardship of their child and remove her from the custody of her parents;

223. The investigation by officer LUTHER, FIGUEROA-MITCHELL and the Chicago Police Department was not "necessarily preliminary" to the investigations by DCFS and the Illinois State's Attorneys handling the child protection matter.

224. The actions by officer LUTHER and FIGUEROA-MITCHELL in performing the polygraph tests upon Plaintiffs were part of a police investigation for purposes of determining whether criminal charges would be brought.

225. Neither officer LUTHER nor officer FIGUEROA-MITCHELL had any duty or legal obligation to provide any polygraph test results to DCFS, MPEEC or the Illinois State's Attorney's handling the child protection matter.

226. Neither the performance of the polygraph tests nor the reporting of the results was "necessarily preliminary" to any action by the State of Illinois to Adjudicate the Wardship of E.D..

227. The information regarding polygraph tests results provided by LUTHER and FIGUEROA-MITCHELL to DCFS, MPEEC and the Illinois State's Attorneys was provided gratuitously.

228. Therefore, officer LUTHER and officer FIGUEROA-MITCHELL's actions providing false and misleading information to DCFS, MPEEC and the Illlinois State's Attorneys was a willful, wanton, malicious and calculated attempt to make JOSE LOUIS DURAN and EVELYN TORRES appear to be the perpetrators of abuse upon their child using information that did not even need to be part of the child protection investigation.

229. The false and misleading polygraph reports provided by LUTHER and FIGUEROA-MITCHELL to DCFS, MPEEC and the Illinois State's Attorneys resulted in the prolonged, involuntary placement of E.D. in foster care and temporary guardianship in favor of DCFS such that the parents were awarded only limited visitation rights of 1 to 2 hours per week;

230. While the court records of the juvenile proceedings remained confidential, no amount of confidentiality could prevent the friends, neighbors and relatives of JOSE LOUIS DURAN and EVELYN TORRES from finding out that DCFS and the State of Illinois had taken actions to remove E.D. from their custody due to proceedings against the parents for suspected child abuse;

231. As a direct, proximate result of the acts and omissions of officer LUTHER and officer FIGUEROA-MITCHELL, E.D. was kept in foster care and out of the custody of her parents for more than 8 months. Plaintiffs have suffered severe emotional distress, mental pain, anguish, humiliation, damage to their reputations and embarrassment from being subjected to an unwarranted prosecution and attacks upon their character and from painful separation from their baby at a very critical stage in the parent-baby bonding process.

232. Defendant CITY OF CHICAGO is also liable under the doctrine of respondeat superior.

WHEREFORE, Plaintiff demands judgment against Defendants officer TINA FIGUEROA-MITCHELL, PATRICIA LUTHER and the CITY OF CHICAGO actual, special, compensatory and punitive damages, attorney's fees, costs, expenses, and interest in an amount deemed at time of trial to be just, fair, and appropriate, plus costs.

Respectfully submitted,

_____
Attorney for Plaintiffs

**DAVID P. BUCHANAN LAW OFFICES**
55 West Monroe, Street, Suite 600
Chicago, IL 60603
(312) 920-9312
Federal Bar No. 6273667

## VERIFICATION

On this the 21st day of November, 2006, JOSE LOUIS DURAN and EVELYN TORRES, state that they have reviewed the entirety of the Complaint and hereby swear and affirm under penalty of perjury under the laws of the United States that those facts of which they have personal knowledge that are stated in the Complaint are true and correct.

_____
Jose Louis Duran

_____
Evelyn Torres